IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
May 12, 2026 Session

**STATE OF TENNESSEE v. JOHN JAY STARNES**

**Appeal from the Circuit Court for Montgomery County**
**No. 63CC1-2023-CR-580     Ashleigh L. Travis, Judge**

———————————————————

**No. M2025-00802-CCA-R3-CD**

———————————————————

John Jay Starnes, Defendant, was convicted following a bench trial of two counts of unlawfully and negligently placing a child in imminent danger in violation of Tennessee Code Annotated section 39-15-401(d) (2022).  Defendant argues that the trial court erred by denying diversion and by imposing a split-confinement sentence of eleven months and twenty-nine days, suspended to probation after service of thirty days in jail.  Following a thorough review of the record and applicable law, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

ROBERT L. HOLLOWAY, JR., J., delivered the opinion of the court, in which TIMOTHY L. EASTER and STEVEN W. SWORD, JJ., joined.

Brennan M. Wingerter, Director, and M. Todd Ridley (on appeal), Assistant Public Defender—Appellate Division, Tennessee Public Defender's Conference; and Roger E. Nell (at trial and sentencing), District Public Defender, for the appellant, John Jay Starnes.

Jonathan Skrmetti, Attorney General and Reporter; Elizabeth H. Evan, Assistant Attorney General; Robert J. Nash, District Attorney General; and Jeffrey P. Watts, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

The charges arose from an incident at the Monroe Carell Pediatric Specialty Clinic situated within Vanderbilt Primary Care located at 800 Weatherly Drive in Clarksville ("the Clinic") on the morning of December 1, 2022.  In Count One, Defendant was indicted for

striking his nine-year-old daughter, L.S.[1], with a closed fist.  In Count Two, Defendant was indicted for pushing L.S. against a wall with his hands on her shoulders and neck.  Defendant waived a jury and proceeded to a bench trial.

### *Bench Trial*

Three clinic employees described Defendant's interactions with L.S. during check-in and intake.  Morgan Stewart, a front-desk nurse, testified that after a dispute over the clinic's check-in tablet, Defendant repeatedly told L.S. to sit down, then "grabbed [L.S.] by the ear and forcefully sat her down in a chair."  Nurse Stewart later saw Defendant "like, punch [L.S.] in the jaw" hard enough that she could "hear [the child's] teeth shut across the lobby."  On cross-examination, Nurse Stewart agreed that L.S. was being "disobedient."

Alyssa Herring, an assistant nurse manager, heard a commotion before Defendant and L.S. entered the lobby.  She testified that Defendant yelled at L.S., pulled her by the back of her shirt, and dragged her to the seating area.  When L.S. later refused to stand to go back to the doctor, Nurse Herring said Defendant pulled L.S. up by both arms and dragged her toward the examination area.  Nurse Herring called her supervisor and Vanderbilt Social Work, which advised her to call 911.

Kimberly Brook Vienneau, a registered nurse, took L.S. to an intake room for height and weight measurements.  When L.S. refused to cooperate, Defendant yanked her up by one arm and spanked her.  After Nurse Vienneau said the measurements were not important, Defendant responded that "we're gonna do this" and placed L.S. on the scale.  When L.S. resisted the height measurement, Defendant put his hands around L.S.'s neck while holding her against the wall.  Nurse Vienneau also recalled Defendant telling L.S. that her mother "would have smacked the crap out of her."

Sergeant Sven Szczerbiak and Officer Rodney Stiles Gilmore of the Clarksville Police Department responded to the 911 call.  Sergeant Szczerbiak did not observe any injuries to L.S.  The officers described L.S. as active, interested in phones and computers, and difficult to keep focused; Officer Gilmore described Defendant as "[v]ery nonchalant" when told he was under arrest.

The defense proof focused on L.S.'s medical and behavioral issues and Defendant's role as her caregiver.  Naomi Zamora, Defendant's wife, testified that Defendant was a stay-at-home father who cared for her three children while she served on active duty in the United States Army.  She said L.S. had a seizure disorder that caused emotional, mental, and cognitive delays and that, on bad days, L.S. could be "'kind of a handful'" and "stubborn."

---

[1] It is the policy of this court to refer to minors by their initials.

Former Crofton Elementary School Resource Officer Michael Ayers testified that he had seen Defendant physically move L.S. from the school to a car when necessary but never saw anything he considered abusive.

Defendant testified that L.S. was nine years old, weighed 94 pounds, and suffered from Dravet Syndrome, a neurological condition that caused behavioral issues. He said L.S. resisted going to the appointment, getting on the elevator, leaving the elevator, and using the check-in tablet only for check-in. Defendant said he had to physically pick her up, stand her up, and move her through the clinic.

Defendant denied striking L.S. with an uppercut or a closed fist. He said he snapped his fingers near her ear to get her attention, spanked her after she threw herself on the floor, and then lifted and moved her by placing his hands under her shoulders while her feet dragged between his legs.

Defendant testified that he picked up L.S. and placed her on the scale after she sat on the floor, and he described similar problems at school, where staff could not touch L.S. and he sometimes had to physically move her. On cross-examination, he admitted spanking L.S. but denied striking her in the face. He said L.S. calmed down after the height and weight measurements were completed.

### *Oral Findings and Pronouncement of Guilt*

After hearing the proof and the parties' arguments, the trial court announced its findings on the record. The court found that Defendant struck L.S. in the face with a closed fist and pushed L.S. against the wall with his hands on her shoulders and neck. The court noted that, "when we talk about child abuse, we get there in two ways. It's either from injury or neglect. And here, it's no doubt that we're talking about an injury." The court found Defendant guilty of child abuse or neglect under Tennessee Code Annotated section 39-15-401(a) in Counts 1 and 2.[2]

---

[2] As we will discuss later, Defendant was not charged in Count 1 or Count 2 with a violation of Tennessee Code Annotated section 39-15-401(a), which is a Class E felony that requires the State to prove that a defendant "knowingly, other than by accidental means, treats a child" nine years of age or older but under eighteen years of age "in such a manner as to inflict injury." Defendant was charged in Counts 1 and 2 with a violation of Tennessee Code Annotated section 39-15-401(d) which is a Class A misdemeanor that requires the State to prove that a defendant "negligently, by act or omission, engages in conduct that places a child" nine years of age or older but under eighteen years of age "in imminent danger of death, bodily injury, or physical or mental impairment[.]"

### April 4, 2025 Sentencing Hearing

At the sentencing hearing, Mrs. Zamora testified about L.S.'s medical needs and Defendant's role in the family's care plan. She said she was enrolled in the Army's "Exceptional Family Member Program" because L.S. required certain doctors for her epilepsy, which limited Mrs. Zamora's duty stations to locations where those specialists were available. Mrs. Zamora testified that the family care plan designated Defendant as responsible for her three children during her deployments and that she was scheduled to deploy to Joint Base Lewis-McChord in Washington State on August 10, 2025. She further testified that L.S. no longer received treatment at the Clinic but instead saw a neurologist in Bowling Green, Kentucky. According to Mrs. Zamora, Defendant had continued to take L.S. to school, and there had been no other problems. She also stated that the Kentucky Department of Children's Services opened an investigation into the incident at the Clinic but closed it the next day.

The defense also presented proof concerning Defendant's criminal history. Tasha Whitehead, an employee of the Montgomery County Public Defender's office, testified that she investigated Defendant's prior criminal history and determined that he received probation for all three of his prior South Carolina convictions and never served any time in confinement for those convictions.

### Pronouncement of Sentence

Following argument, the trial court stated that it had considered the evidence received at trial, including the testimony of several nurses who testified regarding their observations. One nurse testified that, while in the waiting room, Defendant struck L.S. underneath the jaw with "considerable force." Another testified that, while staff were attempting to obtain L.S.'s weight, Defendant was observed holding her by the neck. The court acknowledged Defendant's contrary testimony that this characterization was inaccurate and that he was holding L.S. up in a different manner, rather than under the jaw or around the neck. The court placed "little to no weight" on Defendant's prior convictions because they were "non-violent" and over thirty years old. The court placed "great weight" on the testimony of Mrs. Zamora concerning Defendant's providing day-to-day care for L.S. The court imposed concurrent sentences of eleven months and twenty-nine days and ordered the sentences to be served on unsupervised probation after service of thirty days in confinement.

The trial court then stated that it was denying judicial diversion, finding that even if Defendant was qualified, he was not a suitable candidate. Trial counsel asked the court to clarify whether the denial was based on the *Electroplating* factors or based on Defendant's qualification for judicial diversion. *See State v. Electroplating*, 990 S.W.2d 211, 229 (Tenn. Crim. App. 1998). The court responded that the State "already found" that

Defendant was disqualified, but that to the extent that the court "can ignore that and place him on judicial diversion," the court declined to do so "based on his prior convictions."

### *Ruling on the Motion for New Trial*

Although not required following a bench trial, Defendant filed a motion for new trial claiming that the trial court erred by finding that Defendant violated Tennessee Code Annotated section 39-15-401(a), erred by finding that Defendant was not qualified for judicial diversion, and abused its discretion by denying judicial diversion without considering and weighing the *Parker* and *Electroplating* factors. *See State v. Parker*, 932 S.W.2d 945, 958 (Tenn. Crim. App. 1996).

Concerning the applicable statute under which Defendant was convicted, the trial court explained that "the docket and the rule docket erroneously stated [Tennessee Code Annotated section] 39-15-401(a)," which caused the court "to misstate the code in its final ruling." The court noted that it had "considered the necessary elements of [section] 39-15-401(d) in its ruling" and had "paid special attention to the negligent factor."

Concerning the denial of judicial diversion, the trial court found that Defendant, as "clearly outlined in the TBI certification," had a "prior disqualifying felony or misdemeanor" and was therefore not qualified for diversion. The court noted that even if Defendant were qualified, he would not be a suitable candidate under the *Electroplating* factors, including his prior criminal convictions, his admission that he had been confronted in the past by members of the public regarding his parenting style, his lack of remorse, his attitude, the circumstances of the offense, and the need for deterrence. The court placed great weight on the need for deterrence because the abuse occurred in a public place. The court found that placing Defendant on judicial diversion would not serve the interest of the victim, the public, and the accused.

Defendant timely appeals.

### Analysis

Defendant claims the trial court erred because it only considered two *Parker* and *Electroplating* factors—the circumstances of the offense and the need for deterrence—when it denied Defendant's request for judicial diversion and ordered him to serve thirty days of his sentence in confinement.

***Judicial Diversion***

Tennessee Code Annotated section 40-35-313 governs judicial diversion procedure. "Judicial diversion is a form of 'legislative largess' available to qualified defendants." *State v. King*, 432 S.W.3d 316, 323 (Tenn. 2014). A "qualified defendant" means a defendant who was found guilty or pleaded guilty or nolo contendere to a Class C, D, or E felony; had not been previously convicted of a felony or Class A misdemeanor for which a sentence of confinement has been served; had not been previously granted judicial or pretrial diversion; and is not seeking deferral for a sexual offense, a DUI, certain offenses against elderly or vulnerable adults, or vehicular assault. Tenn. Code Ann. § 40-35-313(a)(1)(B)(i). Upon a finding of guilt, the trial court may place a qualified defendant on probation without entering a judgment of conviction. Tenn. Code Ann. § 40-35-313(a)(1)(A). Once a defendant successfully completes probation, the charge is dismissed. Tenn. Code Ann. § 40-35-313(a)(2).

On appeal, the State and Defendant agree that Defendant was a qualified defendant. However, being qualified for diversion does not entitle a defendant to judicial diversion; rather, it simply allows the trial court to grant diversion in appropriate cases. *Parker*, 932 S.W.2d at 958. A qualified defendant bears the burden of proving that he or she is a suitable candidate for judicial diversion. *King*, 432 S.W.3d at 323.

In determining whether a qualified defendant should be granted or denied diversion, the trial court must consider the following factors:

> (a) the accused's amenability to correction;
> (b) the circumstances of the offense;
> (c) the accused's criminal record;
> (d) the accused's social history;
> (e) the accused's physical and mental health; and
> (f) the deterrence value to the accused as well as others.

*Parker*, 932 S.W.2d at 958. In *Electroplating*, this court added a seventh factor that must be considered: (g) "whether judicial diversion will serve the interests of the public as well as the accused." 990 S.W.2d at 229. Although the record must reflect that the trial court considered the relevant factors, it need not recite every *Parker* and *Electroplating* factor. The court may confine its analysis to the factors applicable to the case and still obtain the presumption of reasonableness. *King*, 432 S.W.3d at 327. In addition to considering the *Parker* and *Electroplating* factors, the trial court must weigh the relevant factors against each other and provide an explanation of its ruling on the record. *Electroplating*, 990 S.W.2d at 229.

In making its decision to grant or deny diversion, a trial court *may* also consider the defendant's "attitude, behavior since arrest, prior record, home environment, current drug [and alcohol] usage, . . . emotional stability, past employment, general reputation, marital stability, family responsibility[,] and attitude of law enforcement." *State v. Markham*, 755 S.W.2d 850, 853 (Tenn. Crim. App. 1988); *see also State v. Washington*, 866 S.W.2d 950, 951 (Tenn. 1993); *State v. Courvertier*, No. W2024-01526-CCA-R3-CD, 2025 WL 2911749, at *5 (Tenn. Crim. App. Oct. 14, 2025), *perm. app. denied* (Tenn. Mar. 31, 2026).

Under the standard of review promulgated in *State v. Bise*, 380 S.W.3d 682, 707-10 (Tenn. 2012), when the trial court considers the relevant *Parker* and *Electroplating* factors and places its reasons for granting or denying judicial diversion on the record, the appellate court "must apply a presumption of reasonableness and uphold the grant or denial so long as there is any substantial evidence to support the trial court's decision." *King*, 432 S.W.3d at 327. "A trial court abuses its discretion when it applies an incorrect legal standard, reaches an illogical conclusion, bases its decision on a clearly erroneous assessment of the evidence, or employs reasoning that causes an injustice to the complaining party." *State v. Davis*, 466 S.W.3d 49, 61 (Tenn. 2015) (citation omitted).

### *Trial Court's Reasoning for Denying Diversion*

Defendant claims that the trial court erred when it found, as a matter of law, that Defendant was ineligible for judicial diversion. The State concedes that Defendant was eligible. Based on the sentencing hearing testimony of Ms. Whitehead, Defendant's prior sentences were probated, and he never served any time in confinement for those convictions. Nevertheless, the trial court erroneously found that Defendant was not eligible for judicial diversion based on the prior convictions listed in the TBI certification.

In its ruling at the motion for new trial hearing, the court again erroneously found that Defendant "had a prior disqualifying felony or misdemeanor" and therefore was not eligible for judicial diversion. The court then found that, even if Defendant were eligible, he would not be a suitable candidate for judicial diversion under the *Electroplating* factors. The court found that Defendant's criminal record weighed against diversion. Concerning the circumstances of the offense, the court found that Defendant "had been confronted in the past by members of the public regarding his parenting style," that he "showed little remorse" regarding the incident at the Clinic or about the prior public incidents, and that he grabbed his 92-pound daughter "by the ear," "punch[ed] her underneath the chin, spanked her[,] and then held her against the wall by her neck[.]" The court found that there was a "great need for deterrence of this type of behavior," especially "considering that this occurred in a public place." The court found that granting Defendant diversion "would not

serve the interest of the public and [Defendant], and would not, quite frankly, be fair to the victim in this matter."

Although the trial court erred when it denied diversion following the sentencing hearing without considering the *Parker* and *Electroplating* factors, the motion for new trial and the hearing on the motion for new trial provided the trial court an opportunity to rectify these deficiencies by identifying the relevant factors and placing on the record its reasons for denying judicial diversion. At the hearing on the motion for new trial, the court found four *Parker* and *Electroplating* factors weighed against diversion—the circumstances of the offense, Defendant's criminal record, the deterrence value to Defendant and others, and whether judicial diversion will serve the interests of the public as well as Defendant. The court also found that Defendant's attitude and prior record did not support diversion. Factors supporting diversion mentioned by the trial court included Defendant's amenability to correction, marital stability, and his family responsibility. It is obvious from the trial court's statement that the court gave great weight to the need for deterrence and to the circumstances of the offense.

Based on the reasoning the trial court placed on the record during the motion for new trial, we determine that the trial court's decision is entitled to a presumption of reasonableness. Applying that presumption, we must uphold the trial court's denial of diversion "so long as there is any substantial evidence to support the trial court's decision." *King*, 432 S.W.3d at 327. We conclude that substantial evidence supports the trial court's decision to deny diversion.

### *Split-Confinement Sentence*

Defendant argues that the trial court improperly ordered him to serve thirty days of his eleven-month-and-twenty-nine-day sentence in confinement. The alternative sentence imposed by the court in this case is commonly characterized as a split-confinement sentence because the sentence is divided between confinement and probation. Tenn. Code Ann. § 40-35-306(a).

Trial courts possess considerable flexibility in misdemeanor sentencing and are not required to make the same detailed findings applicable to felony sentencing. *See State v. Troutman*, 979 S.W.2d 271, 273-74 (Tenn. 1998). Although *Troutman* continues to govern the substantive principles applicable to misdemeanor sentencing, appellate review of all sentencing decisions, including misdemeanor sentencing decisions, is now conducted under the *Bise* abuse-of-discretion standard with a presumption of reasonableness. *King*, 432 S.W.3d at 316. A trial court must impose a misdemeanor sentence consistently with

the purposes and principles of the Tennessee Criminal Sentencing Reform Act of 1989. Tenn. Code Ann. § 40-35-302(b).

In determining whether to impose confinement, a trial court should consider whether confinement is necessary to protect society by restraining a defendant with a long history of criminal conduct; whether confinement is necessary to avoid depreciating the seriousness of the offense or is particularly suited to provide an effective deterrence; and whether less restrictive measures have frequently or recently been applied unsuccessfully. Tenn. Code Ann. § 40-35-103(1). The court should also consider the defendant's potential, or lack of potential, for rehabilitation. Tenn. Code Ann. § 40-35-103(5). The sentence imposed "should be no greater than that deserved for the offense committed," Tenn. Code Ann. § 40-35-103(2), and "should be the least severe measure necessary to achieve the purposes for which the sentence is imposed." Tenn. Code Ann. § 40-35-103(4).

The record reflects that the trial court considered both Defendant's favorable rehabilitative prospects and the seriousness of the offenses before fashioning a sentence that incorporated both confinement and probation.

The trial court emphasized that the offenses occurred in a public medical facility, involved physical aggression toward Defendant's young daughter, and occurred in the presence of others. The court further determined that a period of confinement was necessary to avoid depreciating the seriousness of the offenses and to serve as a deterrent. These findings correspond to the considerations set forth in Tennessee Code Annotated section 40-35-103(1)(B) and support the trial court's decision to require Defendant to serve a brief period of confinement before release to probation.

Because the trial court considered the applicable sentencing principles, articulated its reasons on the record, and imposed a sentence supported by the evidence, Defendant has failed to establish that the trial court abused its discretion in ordering him to serve thirty days in confinement followed by probation. Accordingly, he is not entitled to relief.

### *Conclusion*

For the foregoing reasons, we affirm the judgments of the trial court.

s/*Robert L. Holloway, Jr.*
ROBERT L. HOLLOWAY, JR., JUDGE

- 9 -